No. 61,504

STATE OF KANSAS, *Appellee,* v. THOMAS P. BIRD, *Appellant.*

(768 P.2d 284)

Opinion filed January 20, 1989.

*Benjamin C. Wood,* of Parker, Bigus & Gerstle, P.A., of Overland Park, argued the cause and was on the brief for appellant.

*Rodney H. Symmonds,* county attorney, argued the cause and *Robert T. Stephan,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

HERD, J: This is a criminal action wherein appellant Thomas Bird appeals the district court's denial of his motion for a new trial based on newly discovered evidence.

We upheld Bird's jury conviction of first-degree premeditated murder, K.S.A. 21-3401, in *State v. Bird,* 240 Kan. 288, 729 P.2d 1136 (1986), *cert. denied* 481 U.S. 1055 (1987). Bird was convicted of the July 17, 1983, murder of his wife, Sandra Bird. The State's theory of the murder was that Bird fatally beat Sandra and threw her body off a bridge. Her car was rolled over an embankment so that it first appeared she missed the bridge and was thrown into the water when her car door was torn loose. Further investigation indicated, however, that she had been killed first

and the car had been pushed down the embankment as a cover-up.

The jury refused to accept Bird's theory at trial that Sandra died as a result of a car accident. Bird now claims newly discovered evidence shows Sandra committed suicide by purposefully driving the car over the embankment.

A week before her death, Sandra and Thomas Bird were at a church conference with two couples who were friends of theirs. Al Boison and Charles Smith, along with Bird, were ministers. Their wives, Pat Boison and Carolyn Smith, were alone with Sandra one afternoon when Sandra cried and said she was upset because Bird was spending too much time with his church secretary, Lorna Anderson. Sandra had lost weight and appeared to be depressed about her husband's relationships with other women. She told Carolyn and Pat about a time when a preschool teacher in Bird's church told her she used to wish Sandra would die in a car wreck so she would have Pastor Bird.

At another time during the conference, the Smiths and the Birds were sitting around relaxing and having drinks when the talk turned in a joking manner to new life insurance policies the couples had obtained through the Lutheran Church. Pastor Smith made a joking remark to his wife that he would now have to watch out for her because she would "do him in" for the insurance money. Carolyn Smith replied, "Well, I'd have to be very careful of how," and everyone laughed. Pastor Smith recalled that each person then stated what they thought the best way to kill themselves would be when there was insurance available. Sandra Bird made a comment that if she were ever to commit suicide, she would do it in a car because then it would look like an accident and "the insurance company would have to pay." Everyone laughed again. Carolyn Smith testified she considered the remark a joke added to a light-hearted conversation which was "rapidly degenerating."

When Carolyn Smith heard Sandra had been killed in a car accident, however, her first thought was of suicide. She testified suicide was her "frame of reference" because she had had a painful experience in her past where a close friend had killed herself. She called the Boisons and told them of Sandra's death and reminded them of Sandra's comment about suicide during

the discussion of insurance at the conference. She asked, "She didn't do it, did she?"

Both the Smiths and the Boisons concluded that perhaps Sandra had committed suicide. Pastor Smith testified he believed Sandra committed suicide because he did not think her death was an accident and he did not want to believe it was murder. He told Bird he believed Sandra's death to be suicide. He also told Mark Bird, Thomas Bird's brother; Irv Shaw, Bird's first defense attorney; and Glen Peglau, one of Bird's present attorneys, of this belief. Pastor Smith was called as a witness for Bird at his murder trial in 1986, but was asked no questions regarding the possibility of suicide.

On September 14, 1984, special agent J. Vernon Humphrey of the Kansas Bureau of Investigation received a phone call from Mark Birchler, chief of police in Marianna, Arkansas. Birchler had heard from a friend of Pastor Smith that Sandra had sent Smith a suicide note on the day of her death. Birchler was of the opinion that Smith was upset with Bird because he now believed him to have been unfaithful to Sandra. Agent Humphrey memorialized this information in a report which he provided Bird's attorney.

The information prompted Humphrey to travel to Tampa, Florida, to interview Pastor Smith to see if he had received such a note. Humphrey found Smith had not received a suicide note, but had received a note from Sandra at the end of the conference. At the motion hearing, Pastor Smith recalled Sandra had written, "Dear Charlie. Things are better now with Tom and I. I'm sorry that I did not get a chance to talk to you this weekend, but I have hope for the future. Sandy." Smith explained that Sandra had telephoned him several times in the months preceding her death to talk about her anxiety over her husband's close relationship with Lorna Anderson.

While Agent Humphrey was interviewing Pastor Smith, Carolyn Smith came into the room and added to her husband's replies. There were no inconsistencies between the husband's and wife's comments. Humphrey had titled his report as an interview with Pastor Smith, and did not note in his report that he had also talked with Carolyn Smith. A copy of the report was given to Bird's defense counsel. In the report, Agent Humphrey sometimes referred to "the Smiths" or "they" rather than merely "Smith."

Humphrey noted that Pastor Smith believed that Sandra had "peace of mind and was no longer particularly concerned about anything" at the conference. Agent Humphrey further noted:

"During that conference, however, the Birds and the Smiths got involved in conversations regarding insurance, because they had all recently purchased insurance through the Lutheran system. The victim made statements several times during that conference, when they were talking about insurance, that if anyone ever wanted to commit suicide the way to do it would be in a car wreck. The victim, however, never mentioned that she, personally, was contemplating suicide, nor did the Smiths get the impression that she might be contemplating it."

Agent Humphrey reported that Pastor Smith had planned to testify on Bird's behalf at his trial in 1984, at which he was convicted of criminal solicitation to commit murder of Lorna Anderson's husband. This conviction was affirmed in *State v. Bird*, 238 Kan. 160, 708 P.2d 946 (1985). He found he could not bring himself to do so, however, after Bird confessed to him he was involved in an affair with Lorna Anderson. Pastor Smith told Humphrey he did not believe Bird killed Sandra, but felt that Lorna Anderson could have "pressured Sandy into killing herself."

Agent Humphrey continued his report with the version of events on July 17, 1983, given the Smiths by Bird, concluding: "They don't remember any other particulars about what Bird told them about the activities of that night."

The Smiths testified at the motion hearing that they told Agent Humphrey they both initially believed Sandra to have committed suicide. These opinions were not noted in the report. Agent Humphrey testified the possibility of suicide was considered until the pathologists and investigators on the case reached a consensus of opinion it was not possible to explain Sandra's death in this way.

At the grand jury proceeding on February 11, 1985, Pastor Smith testified about the insurance conversation, a transcript of which was provided to defense counsel:

"A. At that particular conversation, Sandy made some rare careless comment about suicide or let me be exact and say that she indicated that [if] someone were to have an accident, a car accident, it would be very hard for other people to prove whether it was suicide or not. She mentioned that on, I would say, two or three times to me, my wife and another lady that was present.

"Q. Was Tom Bird present at that time?

"A. I don't think Tom was present at that time. I can't say that for sure. He may

have been in one conversation when we were talking about an insurance policy we all had and Tom may have been present at that time, but I can't say for sure."

At the motion hearing, Pastor Smith testified Bird was present during the conversation. His memory of "another lady" being present at the discussion was not explained. Carolyn Smith agreed Bird had been present when his wife made the comment about suicide.

At the motion for a new trial, Pat Boison testified that, when Carolyn Smith had called and related to her the news of Sandra's death, Carolyn had not only told her that Sandra had mentioned suicide by automobile accident, but that she had mentioned she would do it on a deserted road six miles outside of Emporia, the very place where she was killed. Pastor Boison only remembered the Smiths stating that Sandra had said if she was going to commit suicide she would drive over an embankment. He shared this information with Ralph Bird, Thomas Bird's father, before the trial.

Carolyn Smith denied telling Pat Boison that Sandra had predicted the place of her death. She did explain, however, that she had told Pat Boison where Sandra had been killed during the same conversation in which she related Sandra's comment about suicide.

Both Boisons believed Sandra had been depressed and had committed suicide. Neither had heard Sandra say anything about committing suicide, however. Their only information concerning this topic came from the Smiths. Pastor Smith testified he had not provided the Boisons with any information he had not provided the court.

The court accepted into evidence a letter to defense counsel from Pastor Jeffrey Stephens, but noted the letter qualified as unsworn testimony. Pastor Stephens wrote that Pastor Smith had talked to him confidentially after returning from Bird's first trial for solicitation. Stephens said Smith was angry at Bird and "seemed convinced that Sandy Bird's death was suicide and that Tom's alleged affair sent her over the brink." According to Stephens, Smith said Sandra had called him several times in despondency over the relationship. During one of the calls, "she told him that her life was in so much turmoil that she saw no point in living any longer. And during the last call, according to Rev. Smith, she said that she had considered taking her life."

Pastor Stephens said he had kept this information to himself until after Bird's second trial for murder because of Smith's repeated requests for confidentiality. Stephens possessed no information regarding the possibility of suicide other than what he claimed to have heard from Pastor Smith.

Pastor Smith testified at the hearing that Sandra's remarks at the conference were the only suicidal statements he had ever heard her make.

The court also accepted into evidence a copy of Hyde and Forsyth, Suicide: The Hidden Epidemic, Ch. 10 (2d ed. 1986), which warned that signs of depression and suicidal threats should be taken seriously. The authors note that a "sudden apparent peace of mind" may also be a warning that a person has made a final decision to commit suicide.

The first issue is whether the district court erred in denying Bird's motion for a new trial on the grounds of newly discovered evidence. A new trial should not be granted on the grounds of newly discovered evidence unless the evidence is of such materiality as to be likely to produce a different result at a new trial. Further, the defendant bears the burden of proving the evidence could not with reasonable diligence have been produced at trial. Our review of an order denying a new trial is limited to whether the district court abused its discretion. *State v. Richard,* 235 Kan. 355, 363, 681 P.2d 612 (1984).

Bird argues the Boisons and Pastor Stephens were witnesses unknown to both the State and the defense before trial. He argues Carolyn Smith was unknown to the defense because she was not specifically mentioned in Agent Humphrey's report. Bird contends these witnesses gave much stronger evidence of suicide than was believed before trial.

The district court found the evidence was known or should have been known to Bird and was not of such materiality that it would be likely to produce a different result at retrial. The court also noted that there was no evidence Sandra was depressed on the night of her death and that, on the contrary, the evidence at trial showed she was in a joyous mood because she had been promoted at work.

Bird contends the district court abused its discretion by focusing on the evidence of Sandra's state of mind the evening of her

death. This argument is without merit. There is no indication the district court failed to consider all the evidence before it.

There is also no merit to Bird's contention the court abused its discretion in noting the jury found Sandra not to have died as a result of a car wreck. Bird protests the jury did not find that Sandra could not have *intentionally* killed herself in a car wreck. While it is true that the jury's verdict only proves it did not accept Bird's theory at trial that Sandra died in an *accidental* car wreck, most of the evidence supporting this conclusion showed Sandra died of injuries inflicted prior to and outside of the car wreck.

Bird argues that evidence presented at trial now can be seen as pointing to suicide but, without the newly discovered evidence, he could not have known he had a strong case for a suicide theory. The absence of skid marks testified to at trial could be seen as indicative of suicide. Witnesses testified that Sandra had lost weight and been upset but had seemed at peace in the days before her death; there was testimony she had told her mother "her life was right with God." Bird argues the new evidence of Sandra's thoughts of suicide would be likely to convince a jury that her newfound peace came from her decision to kill herself. He also speculates that even Sandra's celebration of a promotion could have plunged her into deeper depression when she realized the fundamental problems with her marriage remained.

Bird argues if Agent Humphrey had indicated in his report that he had interviewed Carolyn Smith as well as her husband, he might have been led to further investigation which might have led to stronger evidence of suicide. Carolyn, not Pastor Smith, was present when Sandra cried, and she was the one who first talked to the Boisons about Sandra's comments during the insurance discussion.

There is strong evidence that Bird knew or could have with reasonable diligence discovered Carolyn Smith's and the Boisons' testimony. He knew from Pastor Smith's remarks to Agent Humphrey and at the grand jury proceeding that Sandra had mentioned suicide. Both Pastor Smith and Carolyn Smith testified Bird was present when Sandra made the remarks. Agent Humphrey's report clearly states Bird was present when Sandra made her comment about suicide. If Bird had found this to be false, he had the opportunity to investigate the report further and determine why the Smiths believed him to be in the room.

Bird knew he and his wife had attended the conference, during which the suicide remarks were made, with the Boisons as well as the Smiths. Paster Boison informed Bird's father that he believed Sandra to have committed suicide, but Boison was not questioned. Bird's defense counsel, Bird's brother, and Bird himself were informed that Pastor Smith believed Sandra's death to be suicide, but Pastor Smith was also not questioned about the topic.

The only new evidence presented by Bird is Pastor Stephens' unsworn statements to defense counsel, which contradict Pastor Smith's sworn testimony in court that he had only heard Sandra mention suicide during the insurance discussion, which discussion was known or made known to Bird before trial. The credibility of the evidence offered in support of a motion for a new trial on the grounds of newly discovered evidence is for the trial court's consideration. *State v. Armstrong*, 240 Kan. 446, 450, 731 P.2d 249, *cert. denied* 482 U.S. 929, 96 L. Ed. 2d 702 (1987).

Further, the information is not of such materiality as would be likely to produce a different result at a new trial. Bird already had evidence in support of a suicide theory before trial—Pastor Stephens' letter, if admitted, would have been merely cumulative. Any indication from the letter that Pastor Smith was angry at Bird and perhaps should be interviewed carefully by defense counsel was also given before trial by Agent Humphrey's report of his conversation with chief of police Mark Birchler. Bird has failed to meet his burden of showing the district court abused its discretion in failing to grant a new trial.

The second issue is whether the State denied Bird due process by failing to reveal exculpatory evidence, in that Agent Humphrey did not specifically state that when he interviewed Pastor Smith he spoke with Carolyn Smith as well.

Bird argues Carolyn's testimony would have been exculpatory in that Carolyn witnessed Sandra's tears and her story of the teacher who had wished Sandra would die in a car wreck. Also, he argues, Carolyn's testimony would have led to further exculpatory evidence because she could have stated Pat Boison was also present at this scene.

This argument is without merit. If Bird did not find Humphrey's report reason enough to interview Pastor Smith, there is

no indication he would have been prompted to interview Carolyn Smith merely because she was mentioned by name. The report indicates several instances where Humphrey received the impressions of both the Smiths. Bird knew that Carolyn and the Boisons were the people most likely to have observed Sandra's comments and demeanor at the conference, at which he either heard her make or was alerted that she had made at least one comment about suicide.

Even had Humphrey mentioned Carolyn by name, prompting Bird to interview her, the only evidence he would have obtained was cumulative evidence of Sandra's anxiety about his relationship with Lorna Anderson and hearsay by the Boisons about what the Smiths told them Sandra said during the insurance discussion. Pastor Smith testified as to what he told the Boisons, and Carolyn Smith's testimony was consistent with her husband's. We hold Agent Humphrey's inadvertent error does not qualify as failure by the prosecution to reveal exculpatory evidence.

The judgment of the trial court is affirmed.